**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

## <u>CIVIL MINUTES – GENERAL</u>

Case No. 5:26-cv-00306-DOC-AS                    Date:  February 2, 2026

Title: U.G. v. Current or Acting Field Office Director, Los Angeles Field Office et al

---

PRESENT:

<u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

| Priscilla Deason<br>for Karlen Dubon | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR<br>PLAINTIFF:<br>None Present | ATTORNEYS PRESENT FOR<br>DEFENDANTS:<br>None Present |

---

| PROCEEDINGS (IN CHAMBERS): | **ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [2]** |
|:---|:---|

Before the Court is Petitioner U.G.'s ("Petitioner") Ex Parte Application for a Temporary Restraining Order ("Application" or "App.") (Dkt. 2). The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.  Having considered the arguments, the Court **GRANTS** the Application.

## I.    BACKGROUND

### A.    Facts

Petitioner originally came to the United States from Kazakhstan on April 2, 2023. Petition ("Pet.") (Dkt. 1) ¶ 2. Petitioner was immediately apprehended by the Department of Homeland Security. *Id.* He was released on May 7, 2023 on an Order of Recognizance. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                    Date: February 2, 2026

                                                                          Page 2

After entering the United States, Petitioner settled in California where he has maintained stable employment and complied with all immigration requirements. *Id.* ¶ 4. Petitioner mainly resided in the Los Angeles area and worked as an auto mechanic. *Id.* ¶ 5.

Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers on August 28, 2025. *Id.* ¶ 6. He is currently detained at the Desert View Annex in Adelanto. *Id.* ¶ 1.

Petitioner has never been ordered removed. *Id.* ¶ 7. He has a pending asylum application, with a hearing set for February 9, 2026. *Id.* He has no criminal record. *Id.* Petitioner also has a wife and three children, all of which currently reside in Uzbekistan. *Id.* ¶ 3.

On January 23, 2026 Petitioner filed his Petition (Dkt. 1) against Respondents Current or Acting Field Office Director, Los Angeles Field Office, Current or Acting Director, United States Immigration and Customs Enforcement, Current or Acting Secretary, United States Department of Homeland Security, Current or Acting United States Attorney General ("Respondents"). He filed his Ex Parte Application for Temporary Restraining Order (Dkt. 2)[1] on the same day.

Respondents have not filed a response, but presumably oppose.

## II.     LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities

---

[1] All pincites are to the Memorandum of Points and Authorities (Dkt. 3).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                     Date: February 2, 2026

                                                                          Page 3

tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co*., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

**III.     DISCUSSION**

Petitioner seeks a temporary restraining order: (1) ordering his release from custody and; and (2) enjoining Respondents from re-detaining Petitioner unless he is first given a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community. Pet. at 12. Having reviewed the authority provided by the Parties and having heard oral argument, the Court **GRANTS** Petitioner's request.

**A.     Likelihood Of Success On The Merits.**

Petitioner argues that his detention is unlawful because he has been re-detained after being released on an Order of Recognizance and that his detention despite this release violates a protected liberty interest. App. At 9-13.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those without lawful staatus *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (cleaned up)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                               Date: February 2, 2026

Page 4

Here, while it is not entirely clear, it appears that Petitioner was initially detained and released under section 236 of the Immigration and Nationality Act, or 8 U.S.C. § 1226(a) and then released on conditional parole.[2]

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Specifically, § 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on-
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole[.]

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

---

[2] *See* Order Of Release On Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (listing section 236 as governing authority).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                      Date: February 2, 2026

Page 5

Courts consistently apply the same procedural due process analysis to petitioners under both forms of parole. The Court in *Pinchi v. Noem* explained the due process rights owed to conditional parolees in a well-reasoned decision:

> [Petitioner'] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).z . . . As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. [Petitioner] justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025).

For the same reasons, Petitioner here possessed a protected liberty interest when he was released on conditional parole and moved to Los Angeles and took steps to find gainful employment while his asylum application remained pending. *See, e.g.*, *Fernández López v. Wofford*, 2025 WL 2959319, *4-5 (E.D. Cal. 2025) (finding that petitioner released from immigration detention on parole had protected liberty interest in remaining out of custody regardless of whether she was paroled under § 1182(d)(5)(A) or §

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                                    Date: February 2, 2026

Page 6

1226(a)); *Noori v. Larose*, 2025 WL 2800149, *4, 9-10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

Because Petitioner has a protected liberty interest, the Court turns to the next step. To determine constitutionally sufficient procedures to protect a liberty interest, courts apply the *Mathews* test. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This test requires courts to balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

Turning to the first factor, Petitioner had a significant liberty interest in remaining out of custody, given the Government 's promise through its grant of conditional parole. *See Zadvydas*, 533 U.S. at 690. A liberty interest, such as Petitioner's, is paramount and, should therefore, be protected. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." (cleaned up)).

Under the second factor, the risk of erroneous deprivation is high. The government revoked Petitioner's parole without any opportunity for pre-detention review and opportunity to be heard. The government earlier found Petitioner to be suitable for conditional parole and that he is not a flight risk or danger to the community. Thus, the government's implicit reversal of this determination without any opportunity for pre-detention review makes the opportunity for erroneous deprivation extremely high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. The government has the capability to hold such a hearing and provide the requisite notice. Forcing the government to comply with proper procedures imposes a very low burden. *See Pinchi*, 792 F. Supp. 3d at 1038-39; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                                    Date: February 2, 2026

Page 7

Accordingly, the Court joins numerous of its sister courts in finding that Petitioner's detention is unlawful because when the Government re-detained him, it revoked his conditional release in violation of the Due Process Clause. *See e.g.*, *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *4 (S.D. Cal. Dec. 23, 2025); *Pinchi*, 792 F.Supp.3d at 1038; *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) .

### B.    Irreparable Injury

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process regarding his detention, so this factor tilts in his favor.

### C.    Balance of Equities and Public Interest

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("When the government is a party, the last two factors merge."). And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up). Indeed, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) (explaining that when a party shows a likelihood of success on the merits of a constitutional claim, "the remaining *Winter* factors favor enjoining the likely unconstitutional law").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                          Date: February 2, 2026

                                                                        Page 8

Here, Petitioner has demonstrated a likelihood of success on the merits so the third and fourth factors also tilt in his favor.

### D.    Bond Requirement

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS** Petitioner's Application. <u>Respondents are **ORDERED** to release Petitioner from custody immediately under no more stringent conditions of release than the original Release on Recognizance. Furthermore, Respondents are **ENJOINED** from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention.</u>

This TRO will expire on February 16, 2026. A preliminary injunction hearing is set for February 17, 2026, at 10:00 a.m.

Should the parties wish to submit briefing, Respondents must file any brief arguing why a preliminary injunction should not issue no later than February 9, 2026, and Petitioner must file any opposing brief no later than February 13, 2026.

The Court will consider a delayed briefing schedule or later hearing date if there is a stipulation to an extension of the TRO beyond the 14-day expiration timeline.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00306-DOC-AS                    Date: February 2, 2026

                                                                Page 9

    The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                        Initials of Deputy Clerk:
                                                                pd/kdu
CIVIL-GEN